1
2
3
4
5
6
7
8
9            UNITED STATES DISTRICT COURT
10          SOUTHERN DISTRICT OF CALIFORNIA
11

| | |
|---|---|
| William M. Gates,<br><br>                Plaintiff,<br><br>v.<br><br>H. Gomez, Correctional Officer; H. Florendo, Psych Tech/Nurse; and C. Godinez, Sergeant/Correctional Officers,<br><br>                Defendants. | Case No.:  17-cv-00901-WQH-BGS<br><br>**REPORT AND RECOMMENDATION REGARDING (1) DEFENDANTS' MOTION TO DISMISS AND (2) DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF NOS. 13-14].** |

      This Report and Recommendation is submitted to United States District Judge William Q. Hayes pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.  For the reasons discussed below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 14) be **GRANTED** and Defendants' Motion to Dismiss (ECF No. 13) be **GRANTED** pursuant to Southern District of California Civil Local Rule 7.1.f.3.c.  If the District Court does not grant Defendants' Motion to Dismiss pursuant to Civil Local

Rule 7.1.f.3.c., **IT IS RECOMMENDED** in the alternative that the Motion to Dismiss (ECF No. 13) be **GRANTED IN PART AND DENIED IN PART** as outlined below.

## PROCEDURAL HISTORY

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to the Civil Rights Act, 42 U.S.C. § 1983. At the time of the February 8, 2017 incident discussed below, Plaintiff was housed at Richard J. Donovan Correctional Facility ("RJD"). (ECF No. 1.) Defendants Correctional Officer H. Gomez, medical staff member H. Florendo, and Sergeant C. Godinez (collectively "Defendants") filed a Motion to Dismiss Plaintiff's Complaint on January 23, 2018. (ECF No. 13.) Additionally, on January 31, 2018 Defendants filed a pre-answer motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc). (ECF No. 14.) In their Motion for Summary Judgment, Defendants argue that Plaintiff has failed to exhaust all available administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(a). Plaintiff was given until April 5, 2018 to file oppositions to the pending motions. (ECF No. 15.) To date, Plaintiff has not filed an opposition to either motion.[1] Because Plaintiff filed no oppositions, Defendants filed no replies.

## PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff generally claims that while housed at RJD, he was subject to excessive force and deliberate indifference in violation of his Eighth Amendment rights, as well as a false accusation that led to him being disciplined for "Battery on a Peace Officer" resulting in "an additional 150 days [being] added to [his] term." (ECF No. 1 at 3-5.)[2]

Plaintiff alleges that at 12:30 p.m. on February 8, 2017, Defendant Gomez used excessive force against him. (*Id.* at 3.) While Plaintiff was heading to a mental health

---

[1] Plaintiff was informed of the consequences of failing to file an opposition to Defendants' Motion for Summary Judgment both by the Court (ECF No. 15 at 2-3) and by Defendants (ECF No. 14-3).
[2] All citations to page numbers in this Report and Recommendation refer to the page numbers generated by the CM/ECF electronic pagination system.

group therapy session, Defendant Gomez ordered Plaintiff to return to his cell. When Plaintiff asked why, Defendant Gomez ordered Plaintiff to face the wall and conducted a clothed body search of Plaintiff. When Plaintiff told Defendant Gomez he was being too aggressive in his search, Defendant Gomez responded by using obscenities, smashing Plaintiff's face into the wall, and handcuffing him. Defendant Gomez then slammed Plaintiff to the ground, dislocating Plaintiff's right shoulder, and placed a knee in the middle of Plaintiff's back. He punched Plaintiff in the head approximately seven to eight times and then kicked him in the head in the presence of other officers. (*Id.*)

Based on this incident, Plaintiff alleges that Defendant Gomez prepared a Rules Violation Report ("RVR") in which he falsely accused Plaintiff of "Battery on a Peace Officer." (*Id.* at 5.) In the RVR, Defendant Gomez falsely stated that Plaintiff struck him multiple times in the chest. Plaintiff was subjected to a disciplinary hearing. He alleges that he "pled innocent" to Defendant Gomez's RVR. Further, he alleges at the hearing he "pleaded his innocence and exposed contradicting narratives of the alleged victim [Defendant Gomez] and the only witness of the incident exposing the obvious false[ ] report[.]" (*Id.*) Nevertheless, he was found guilty during the hearing based on a "'preponderance of the evidence'". (*Id.* [quotations in original].) Despite evidence showing the falsity of Defendant Gomez's RVR, he was found guilty of "Battery on a Peace Officer" and "received an additional 150 days"[3] on his prison sentence. He also has to serve a Security Housing Unit, or "SHU", term with "limited movement, programs, and privileges." (*Id.*)

After the incident on February 8, 2017, despite complaining to medical staff Defendant Florendo and Defendant Sergeant Godinez about his shoulder and head pain, Plaintiff received no medical attention for his injuries (*Id.* at 4.) Defendant Florendo refused to provide him with medical care and Defendant Godinez mocked him and also

---

[3] In their Motion, Defendants characterize Plaintiff's reference to "receiv[ing] an additional 150 days" on his sentence as the loss of 150 days of good-time credits. (*See* ECF No. 13-1 at 7.)

refused to get Plaintiff medical attention. When Plaintiff expressed his pain and requested medical attention from Defendant Florendo, Defendant Florendo stated "you should have went back to your cell." (*Id.*) When Plaintiff informed Defendant Godinez, he was told "you don't have shit coming to you." They left Plaintiff in a "small caged module with a dislocated shoulder and sore head." Plaintiff allegedly "snapped" his dislocated should back into place. He suffered emotional injuries, mental anxiety, depression, and suicidal thoughts, due to Defendants' refusal to provide him with medical care. (*Id.*)

In the Complaint, Plaintiff checked the "yes" box indicating that he has previously "exhausted all forms of available relief from the proper administrative officials regarding the acts alleged". (*Id.* at 6.) Specifically, he states that California Department of Corrections and Rehabilitation ("CDCR") "inmate/parolee appeal 602 forms that were denied and a miscarriage of administrative remedies a use of force/complaint/video." (*Id.*)

**MOTION FOR SUMMARY JUDGMENT**

Defendants' Motion for Summary Judgment (ECF No. 14) is currently before the Court. In their Motion for Summary Judgment, Defendants argue that Plaintiff has failed to exhaust all available administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act. (*Id.*) Plaintiff did not oppose the motion. (*See* docket.)

## I. LEGAL STANDARD

### A. Motion for Summary Judgment for Failure to Exhaust

Summary judgment is proper when it is demonstrated that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). Each party's position as to whether a fact is disputed or undisputed must be supported by either: "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or

presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A district court may not grant a motion for summary judgment solely because the nonmoving party failed to file an opposition. *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n. 4 (9th Cir. 1994). However, a court may "grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact[.]" *Williams v. Santa Cruz Cnty. Sheriff's Dep't*, 234 Fed. App'x 522, 523 (9th Cir. 2007) (citing *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993)); *see Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001).

**B. Statutory Exhaustion Requirement**

Title 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") states: "No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Such exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Section 1997e(a) has been construed broadly to "afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case," *id.* at 525, and to encompass inmate suits about both general circumstances and particular episodes of prison life. *Id.* at 532. "The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained," "regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 738 (2001); *see Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010); *McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (per curiam) (finding that prisoner's civil rights action must be dismissed without prejudice unless prisoner exhausted available administrative remedies before he filed suit, even if he fully exhausts while the suit is pending). This means that a prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Marella v. Terhune*, 568

F.3d 1024, 1027 (9th Cir. 2009) (per curiam) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

The only limitation to the exhaustion requirement is that administrative remedies must be "available" to the prisoner. *See Ross v. Blake*, __ U.S. __ 136 S. Ct. 1850, 1862 (2016) ("An inmate need exhaust only such administrative remedies as are 'available.'") Failure to exhaust remedies that are "effectively unavailable does not bar a claim from being heard in federal court." *McBride v. Lopez*, 807 F.3d 982, 986 (9th Cir. 2015) (citing *Nunez v. Duncan*, 591 F.3d 1217, 1225-26 (9th Cir. 2010)). A plaintiff bears the burden of demonstrating that "he 'took reasonable and appropriate steps to exhaust his . . . claim and was precluded from exhausting, not through his own fault . . . .'" *Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010) (quoting *Nunez*, 591 F.3d at 1224).

Generally, the Ninth Circuit has held a motion for summary judgment is the proper vehicle to raise whether a plaintiff has exhausted administrative remedies. *Albino*, 747 F.3d at 1166.[4] "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* A defendant must first prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172. Once the defendant has carried that burden, the "prisoner must come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* Even so, the ultimate burden of showing entitlement to summary judgment for failure to exhaust administrative remedies remains with the defendant. *Id.*

### C. CDCR's Exhaustion Requirements

---

[4] This excludes the "the rare event that a failure to exhaust is clear on the face of the Complaint." *Albino*, 747 F.3d at 1166-68.

"The California prison system's requirements 'define the boundaries of proper exhaustion.'" *Marella*, 568 F.3d at 1027 (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)). CDCR's administrative appeal procedures are set forth in the California Code of Regulations, Title 15 §§ 3084.1 to 3084.9. An inmate "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). Compliance with 42 U.S.C. § 1997e(a) is mandatory and state prisoners are required to exhaust CDCR's administrative remedy process prior to filing suit in federal court. *Woodford*, 548 U.S. 81 at 85-86 (2006); *Sapp*, 623 F.3d at 818. During the times alleged in Plaintiff's Complaint, Title 15 of the California Code of Regulations required three levels of appellate review.[5]

The regulations require a prisoner to proceed through all three levels of review. *See* Cal. Code Regs. tit. 15, § 3084.2(a). To properly exhaust, a prisoner must submit appeals on a standardized CDCR Form 602, attach all necessary supporting documentation, and submit the appeal within thirty days of the disputed event. *Id.* §§ 3084.2, 3084.3(a), 3084.8(b). For any appeal, a prisoner must "describe the specific issue under appeal and the relief requested"; he must "state all facts known and available to [him] regarding the issue being appealed at the time of submitting" the 602 Form. *Id.* § 3084.2(a). This is done at the prisoner's institution. *Id.* § 308.42(a)–(c). If a prisoner is not satisfied with the first level response, he could submit the appeal to the second level of review. *Id.* §§ 33084.2(d), 30847(c). If he is not satisfied with the second level response for a custody staff-related appeal, he could then submit the appeal to the Office of Appeals in Sacramento, California. *Id.* If he is not satisfied with the second level response for a health

---

[5] As of September 1, 2017, CDCR adopted a separate grievance procedure for health care issues. *See* Cal. Code Regs. tit. 15, §§ 3087-3087.12. These regulations require only two levels of review for health care-related appeals. *Id.* Plaintiff's grievances would have been submitted before this new procedure took effect. Further, as discussed below, Plaintiff submitted no health care related grievances stemming from the February 8, 2017 incident.

care related appeal, he could submit the appeal to the Health Care Correspondence and Appeals Branch ("HCCAB") in Sacramento, California. *Id.* Submission of an appeal to either the Office of Appeals or the HCCAB is considered third level of review. *Id.* §§ 3084.1(b), 3084.7(d)(3). A decision from either office exhausts a prisoner's remedies as to those claims. *Id.*

## II. DEFENDANTS' MOTION

Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to the claims in this action. In support of their argument, Defendants supply declarations from the following individuals: (1) S. Gates, the Chief of the HCCAB which is responsible for "providing oversight of medical, dental, and mental-health care for adult inmates within California prisons"; (2) V. Sosa, the Appeals Coordinator for RJD; and (3) M. Voong, the Chief of the Office of Appeals. (Gates Decl., ECF No. 14-4; Sosa Decl., ECF No. 14-5; Voong Decl., ECF No. 14-6.) All three declarants set forth an overview of the CDCR grievance system as detailed above. (Gates Decl. ¶ 6, ECF No 14-4 at 3; Sosa Decl. ¶¶ 2-4, ECF No. 14-5 at 2-3 [citing relevant sections of Title 15 of the California Code of Regulations]; Voong Decl. ¶ 4, ECF No. 14-6 at 2.) Further, Appeals Coordinator Sosa states that the grievance process "was available to all inmates in [RJD] in 2017." (Sosa Decl. ¶ 2, ECF No. 14-5 at 2.)

Defendants set forth a history of Plaintiff's filed grievances beginning on February 8, 2017, the date of Defendant Gomez's alleged use of excessive force. On March 28, 2017, the Inmate Appeals Office at RJD received an appeal from Plaintiff regarding the February 8, 2017 incident. (Sosa Decl. ¶ 6(b), ECF No. 14-5 at 2). Specifically, "Plaintiff alleged that staff violated his due process rights and did not follow proper procedure during a disciplinary hearing for RVR Log No. 2221525 dated February 8, 2017." (*Id.*) This RVR was filed by Defendant Gomez for Plaintiff's February 8, 2017 "Battery on a Police

Officer." (*Id.* at 38-39.)[6] As characterized by the second level appeal response, Plaintiff's March 28, 2017 Form 602 specifically alleged that "(1) staff violated his due process rights and did not follow proper procedures while recording [his] initial statements; (2) staff failed to read [him his] rights pursuant to the *Miranda* decision; and (3) contradicting and conflicting staff statements." (Sosa Decl., Ex. B, ECF No. 14-5 at 29; *see also id* at 32-35 [Plaintiff's March 28, 2017 Form 602].)

Plaintiff's appeal was "bypassed to second level review" and denied at the second level of review. (*Id.* at 29) A memorandum was issued on April 20, 2017 informing Plaintiff of the denial. (*Id.* at 28-30; 83.) It instructed Plaintiff that he could appeal to the third level of review and how to do so. (*Id.* at 30.) The second level review denial was marked by the RJD Appeals Coordinator as being "mailed/delivered to appellant" on May 10, 2017. (*See* ECF No. 14-5 at 33.)

Plaintiff did not pursue the appeal to third level review. He never submitted an appeal to either the Office of Appeals or the HCCAB regarding his allegations against any Defendants. Chief of the Office of Appeals Voong, whose office processes third-level non-healthcare appeals, states in his declaration that other than Plaintiff's appeal regarding a property issue stemming from Plaintiff's placement in administrative segregation following the February 8, 2017 incident, his office "has not accepted or assigned for review any appeals from Plaintiff, between February 8, 2017 to [January 30, 2018] pertaining to allegations" in the Complaint. (Voong Decl. ¶ 10, ECF No. 14-6 at 3-4, Ex. B at 27; *see* Ex. A, ECF No. 14-6 at 8-11.) Additionally, Chief of HCCAB Gates, whose office processes third level health-care appeals, states in his declaration that "there were no health-care appeals received accepted, rejected, or screened out from the Plaintiff while he was housed at RJD and pertaining to the allegations of deliberate indifference to Plaintiff's

---

[6] The RVR submitted as part of Plaintiff's appeal at second level review appears to be missing two of its four pages.

medical care against [Defendant] Florendo." (Gates Decl. ¶ 7, Ex. A, ECF No. 14-4 at 3-4, 6.)

Other than the appeal dated March 28, 2017, none of Plaintiff's other grievances after February 8, 2017 that he appealed were about Defendants.[7] (Sosa Decl. ¶¶ 6-8, ECF No. 14-5 at 3-5; Voong Decl. ¶¶ 9-10, ECF No. 14-6 at 3-4.) Further, Defendants submitted a tracking system log listing that Plaintiff had a 2012 appeal denied by the Office of Appeals at third level review. (Voong Decl. ¶ 11, Ex. B, ECF No. 14-6 at 27.) Additionally, he appealed a grievance regarding a correctional officer's failure to inventory his television when he was placed in administrative segregation on February 8, 2017 through third level review. (Sosa Decl. ¶ 6(a), ECF No. 14-5 at 3-4; Sosa Decl., Ex A, ECF No. 14-5 at 6-26; Voong Decl. ¶ 9, Exs. A & B, ECF No. 14-6 at 3, 5-27.)

## III. FINDINGS AND RECOMMENDATION BASED UPON EVIDENCE PRESENTED

As discussed above, if administrative remedies were available to Plaintiff before he filed his Complaint, he was required to exhaust all of his claims via the prison grievance process before filing suit with this Court. Cal. Code Regs. tit. 15, § 3084.1. This includes complying with the prison's "deadlines and other critical procedural rules" for filing administrative appeals. *See Woodford*, 548 U.S. at 90.

Given the declarations and documentary evidence discussed above, Defendants have met their burden of showing that the grievance procedure was available to Plaintiff and that he did not exhaust that remedy regarding any of the claims he brings in this action. (*See* Sosa Decl. ¶ 6(b), Ex. B, ECF No. 14-5 at 28-64 [appeal of RJDB17-1955 alleging staff violated Plaintiff's due process rights and did not follow proper procedure during

---

[7] Plaintiff also submitted an appeal on April 21, 2017 regarding a non-defendant correctional officer's failure to inventory his television when he was placed in administrative segregation on February 8, 2017 following the incident at issue. The appeal was assigned Appeal Log No. RJD-B-17-1375 and was denied at third level review. (Sosa Decl. ¶ 6(a), ECF No. 14-5 at 3-4; Sosa Decl., Ex A, ECF No. 14-5 at 6-26; Voong Decl. ¶ 9, Exs. A & B, ECF No. 14-6 at 3, 5-27.)

disciplinary hearing for RVR Log No. 2221525 dated February 8, 2017 was "denied at the second level of review" on April 20, 2017 and was not submitted for third level review].)

Plaintiff did not exhaust his administrative remedies with regards to his deliberate indifference claim against Defendants Florendo and Godinez. Defendants' records show that Plaintiff did not appeal *any* healthcare related grievance stemming from the February 8, 2017 incident. (Gates Decl. ¶ 7, ECF No. 14-4 at 3 [confirming "no health-care appeals [were] received, accepted rejected, or screened-out from Plaintiff while he was housed at RJD and pertaining to the allegations of deliberate indifference to Plaintiff's medical care against Physician Assistant Florendo"].) Plaintiff did not even appeal a grievance based on his deliberate indifference claim to the initial level of review, let alone exhaust such a grievance by appealing it through third level review. (*See* Gates Decl. ¶¶ 4-5, ECF No. 14-4 at 2-3 [the Health Care Appeals and Risk Tracking System "tracks inmate health-care appeals that are processed by the institutions at the first and second levels of review, as well as those processed by the HCCAB and adjudicated at the third level" and also "tracks health-care appeals that were received and ultimately rejected"]; *id.* at 6 [Plaintiff's appeal history].)

Additionally, Defendants' evidence shows that Plaintiff did not exhaust his administrative remedies with regards to his excessive force claim against Defendant Gomez. (*See* Sosa Decl. ¶¶ 6-7, ECF No. 14-5 at 3-4 [listing all appeals received from Plaintiff at RJD beginning February 8, 2017]; *id.* at 83 [Plaintiff's appeal history].) As with his deliberate indifference claim, Plaintiff did not even appeal a grievance based on his excessive force claim to the initial level of review, let alone exhaust such a grievance by appealing it through third level review. (*See id.*)

Further, Defendants' evidence shows that Plaintiff did not exhaust his administrative remedies with regards to his due process claim against Defendant Gomez related to the filing of the allegedly false RVR. The record shows that Plaintiff did appeal his March 28, 2017 due process grievance to the first level of review, which was bypassed to second level review and was denied. (Sosa Decl. ¶ 6(a), ECF No. 14-5 at 3-4; *id.* Ex. B at 28-30 [second

level appeal response].)  However, Plaintiff did not then appeal his due process grievance through third level review.  (Voong Decl. ¶ 9, ECF No. 14-6 at 4 [the only third-level appeal submitted to the Office of Appeals after February 8, 2017 "did not pertain to any of the Defendants or allegations" at issue in this action].)  Defendants submitted a tracking system log listing that Plaintiff had a 2012 appeal denied by the Office of Appeals at third level review.  (Voong Decl. ¶ 11, Ex. B, ECF No. 14-6 at 27.)  Because Plaintiff had submitted other grievances in the past, he was familiar with the grievance process.  Further, because Plaintiff was able to submit his appeal related to the loss of his television through third level review during 2017, it supports Defendants' claim that the grievance process "was available to all inmates in [RJD] in 2017."  (Sosa Decl. ¶ 2, ECF No. 14-5 at 2.)

Now, to defeat a properly supported motion for summary judgment based on a prisoner's failure to exhaust pursuant to 42 U.S.C. § 1997e(a), Plaintiff must "come forward with some evidence showing" that he has either (1) properly exhausted his administrative remedies before filing suit or (2) "there is something in his particular case that made the existing and generally available remedies unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'"  *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5) (9th Cir. 1996)); *Jones*, 549 U.S. at 218.

Here, Plaintiff has filed no opposition to Defendants' Motion for Summary Judgment and provides no evidence to contradict Defendants' evidence showing non-exhaustion.  (*See* docket.)  The only document before the Court reflecting Plaintiff's position regarding the exhaustion of his claims is the Complaint.  In the Complaint, Plaintiff pleads that he exhausted administrative remedies as follows:  "CDCR inmate/parolee appeal 602 forms that were denied and a miscarriage of administrative remedies a use of force/complaint/video."  (ECF No. 1 at 6.)  This assertion, with no support and not signed under penalty of perjury, fails to meet Plaintiff's burden to present evidence raising a genuine issue of material fact that exhaustion occurred or should be

excused because administrative remedies were "effectively unavailable" to him at the time he initiated this action.

Therefore, based on the record before the Court, Defendants have met "their burden of demonstrating a system of available remedies at the initial step of the *Albino* burden-shifting inquiry." *Williams*, 775 F.3d at 1192. Defendants have shown that Plaintiff had the opportunity to appeal the denial of his grievance to the third and final level of review, but there is no evidence in the record showing that he did so.[8] Based on the record before the Court, Plaintiff has failed to submit evidence sufficient to defeat Defendants' showing

---

[8] Pursuant to documents submitted by Defendants, Plaintiff filed a Form 602 dated June 9, 2017 in which he requested a status update regarding two "pending" appeals. One of these "pending" appeals was Plaintiff's March 28, 2017 appeal regarding the February 8, 2017 RVR at issue in this case. (ECF No. 14-5 at 61 [appeal log number RJDB17-1955].) On the form rejecting Plaintiff's June 9, 2017 request for appeal resolution, Plaintiff was advised that appeal RJDB17-1955 was denied at the second level review on April 20, 2017. (*Id.* at 59.) He appears to have written at the bottom of the rejection notice that "Due to multiple transfers, I just now received this notice on 9/4/2017. I had no idea that Log # RJDB17-1955 was denied on [second level review] on 4/20/2017. I never received any notice informing me of such. To 'resubmit', do I resubmit this 602 that is already drafted or do I draft up a new one and submit that 602?" (*Id.*)

Plaintiff filed the Complaint to initiate this action on May 4, 2018. (ECF No. 1.) Plaintiff has filed no opposition and has submitted no declaration signed under penalty of perjury attesting to the fact that he did not receive notice of his second level review denial regarding RJDB17-1955 until September 4, 2017. Further, even if Plaintiff did in fact not receive notice that appeal RJDB17-1955 was denied at the second level review until September 9, 2017, at the time he filed the Complaint as far as he knew, he had not fully exhausted the administrative grievance process because (1) second level review was still pending and (2) he had not yet appealed to the third and final level of review. There was no basis for Plaintiff to believe that the grievance process itself was "effectively unavailable" to him. At the time he filed the Complaint, Plaintiff had not "been informed that the appeals process was unavailable to him." *See Marella*, 568 F.3d at 1027 (prisoner was not required to "exhaust further levels of review once he [had] . . . been reliably informed by an administrator that no remedies are available"). He merely thought his appeal was still pending. Further, Plaintiff did in fact appeal another grievance stemming from the events of February 8, 2017, regarding the loss of his television when he was placed in administrative segregation, through third level review. (*See* ECF No. 14-5 at 9-12 [Plaintiff's Form 602 submitted on February 28, 2017 regarding his missing television]; ECF No. 14-6 at 27 [Inmate/Parolee Appeals Tracking System – Level III for Plaintiff noting his appeal regarding his missing television, RJD17-1375, was denied at third level review on December 4, 2017].) Thus, as the grievance process was not "effectively unavailable" to Plaintiff at the time he filed the Complaint on May 5, 2017, the allegations regarding the February 8, 2017 RVR were not exhausted prior to initiating this action as the Ninth Circuit requires. *See McKinney*, 311 F.3d at 1199 (exhaustion must be accomplished before filing a federal lawsuit and not while the lawsuit is pending).

of non-exhaustion. Accordingly, Defendants are entitled to summary judgment based on Plaintiff's failure to exhaust. The Court **RECOMMENDS** that Defendants' Motion for Summary Judgment (ECF No. 14) be **GRANTED** and this action be dismissed.

**MOTION TO DISMISS**

Defendants' Motion to Dismiss is also currently pending before the Court. (ECF No. 13.) Defendants raise four bases for the dismissal of portions of Plaintiff's Complaint. As previously discussed, Plaintiff did not oppose the motion. (*See* docket.)

## I. DISMISSAL PURSUANT TO CIVIL LOCAL RULE 7.1.

Before reaching Defendants' arguments for dismissal of Plaintiff's Complaint, and given the Court's **RECOMMENDATION** that the Motion for Summary Judgment (ECF No. 14) be **GRANTED** as discussed above, the Court **RECOMMENDS** that Defendants' Motion to Dismiss (ECF No. 13) be **GRANTED** pursuant to Southern California Civil Local Rule 7.1.f.3.d. due to Plaintiff's failure to oppose the motion.

Although courts must construe pleadings liberally in favor of pro se litigants in prisoner civil rights cases, they remain "bound by the rules of procedure." *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995). District courts have the power to enact and apply local rules, including dismissal of a case for failure to comply with local rules. *United States v. Warren*, 601 F.2d 471, 473 (9th Cir. 1979) (per curiam) (citations omitted) ("It is undisputed that district courts have the authority to 'prescribe rules for the conduct of their business' in any manner not inconsistent with the federal rules or Acts of Congress."). The Ninth Circuit has held that a district court may grant an unopposed motion to dismiss where a local rule permits but does not require it to do so. *See Ghazali*, 46 F.3d at 53-54 (pro se litigants are "bound by the rules of procedure").

Southern District of California Civil Local Rule 7.1.f.3.c. provides that "[i]f an opposing party fails to file the papers in the manner required by Civil Local Rule 7.1.e.2, that failure may constitute a consent to the granting of a motion or other request for ruling by the court." CivLR 7.1.f.3.c. As such, the Court has the option of granting Defendants' Motion to Dismiss on the basis of Plaintiff's failure to oppose. Before dismissing an action

for failure to comply with local rules, district courts "weigh several factors: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases of their merits; and (5) the availability of less drastic sanctions.'" *Ghazali*, 46 F.3d at 53 (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)).

Here, Defendants have attached a Certificate of Service to their Motion to Dismiss, representing that Defendants timely served Plaintiff with their Motion. (ECF No. 13 at 10.) The Court provided Plaintiff adequate time to prepare a written opposition to Defendants' Motion, and Plaintiff did not file an opposition. While public policy generally favors the disposition of cases on their merits, *see Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998), a case is unable to move forward to resolution on the merits if the plaintiff fails to defend his complaint against a Rule 12 motion. Accordingly, this policy provides little support for a party who bears the responsibility for moving a case toward disposition on the merits but whose conduct impedes or prevents progress in that direction. *See In re Eisen*, 31, F.3d 1447, 1454 (9th Cir. 1994). Further, dismissal of Plaintiff's claims pursuant to Civil Local Rule 7.1.f.3.c facilitates case management of the Court's docket. Thus, the Court concludes that the balance of the *Ghazali* factors weigh in favor of dismissal. *See Ghazali*, 46 F.3d at 53.

Accordingly, **IT IS RECOMMENDED** that the District Court **GRANT** Defendants' unopposed motion pursuant to Civil Local Rule 7.1.f.3.c and **DISMISS** the claims against Defendants. If the District Court chooses not to dismiss Plaintiff's Complaint on this basis, the Court addresses further bases for dismissal of portions of the Complaint below.

## II. LEGAL STANDARDS

### A. Construction of a Pro Se Litigant's Complaint

The factual allegations of a pro se inmate must be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Accordingly, in a civil rights case, the Court must construe the pleadings of a pro se

plaintiff liberally and afford him the benefit of any doubt. *Garmon v. County. of Los Angeles*, 828 F.3d 837, 846 (9th Cir. 2016); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). "This rule is particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). However, despite the liberal interpretation a court must give to pro se pleadings, it cannot provide "essential elements of the claim that were not initially pled." *Ivey v. Bd. Of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.* Even a pro se plaintiff must specify "with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones v. Cmty. Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984).

The Court should grant a pro se litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation omitted). Before dismissing a complaint filed by a pro se plaintiff, a court must give some notice of the complaint's deficiencies. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) ("[a] pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment"). Nevertheless, when amendment of a complaint would be futile, the Court may dismiss without leave to amend. *Id.* at 1105-06, 1111; *see Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1088 (9th Cir. 2002) ("there is no need to prolong the litigation by permitting further amendment" if a "basic flaw" in pleading cannot be cured by amendment).

### B. Motion to Dismiss for Failure to State a Claim

A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Id.* Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that

the pleader is entitled to relief" so as to provide a defendant of "fair notice of what the . . . claim is and the grounds upon which it rest." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 677.

Further, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The requirement for facial plausibility is met when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing a claim's plausibility, the Court must "draw on its judicial experience and common sense." *Id.* at 679 (determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). A "mere possibility of misconduct" falls short of meeting this plausibility standard. *Iqbal*, 556 U.S. at 678-79; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The court is "not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), courts must assume the truth of the facts presented and construe all inferences from them in the light most favorable to the nonmoving party. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (per curiam); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008). Further, the court may consider allegations contained in the pleadings, exhibits attached to the complaint, and documents and matters properly subject to judicial notice. *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007).

### III.   OVERVIEW OF THE COMPLAINT

A detailed account of the factual allegations contained in the Complaint are discussed above.  In summary, Plaintiff alleges the following claims: (1) Defendant Gomez's actions on February 8, 2017 amounted to excessive force in violation of his Eighth Amendment right to be free from cruel and unusual punishment; (2) Defendants Florendo and Godinez's actions on February 8, 2017 amounted to deliberate indifference to a serious medical need in violation of his Eighth Amendment right to be free from cruel and unusual punishment; and (3) Defendant Gomez's Rules Violation Report ("RVR") stating Plaintiff committed "Battery on a Peace Office" was a false accusation that led to Plaintiff's false imprisonment, as the resultant prison disciplinary proceedings resulted in Plaintiff's prison term increasing 150 days.  Plaintiff demands monetary damages and injunctive relief.  (ECF No. 1.)

## IV.  ANALYSIS

In their Motion to Dismiss, Defendants argue: (1) the Complaint violates Federal Rule of Civil Procedure ("Rule") 20 by improperly joining unrelated claims against unrelated parties in a single action (ECF No. 13-1 at 4-6); (2) Plaintiff has no constitutional right against false accusations (*id.* at 6-7); (3) Plaintiff's false accusation and false imprisonment claim is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994) (*id.* at 7-8); and (4) Plaintiff cannot maintain his claims against Defendants in their official capacities and his request for injunctive relief is moot as he is no longer housed at RJD (*id.* at 8).  The Court addresses each argument in turn.

### A.  Plaintiff's Excessive Force Claim And Deliberate Indifference To A Serious Medical Need Claim Are Not Improperly Joined

The first ground upon which Defendants move to dismiss Plaintiff's Complaint is that Plaintiff has improperly joined unrelated claims in violation of Rule 20.  They argue Plaintiff must be made to elect which claim he would like to proceed upon while the other is dismissed.  (ECF No. 13-1 at 6.)

Specifically, Defendants argue that Plaintiff's deliberate indifference claims against Defendants Florendo and Godinez regarding his alleged injuries from the February 8, 2017

18

alleged excessive force incident should not be brought in the same action as Plaintiff's excessive force claim against Defendant Gomez. (*Id.* at 4.) They claim that "other than temporal proximity, there is no factual or legal relation between the two incidents." (*Id.* at 5.) Further, they argue that by permitting Plaintiff's Complaint to proceed, the Court is allowing Plaintiff to "skirt[ ] the [Prison Litigation Reform Act], in that he will only obtain one 'strike' against him should this particular case be considered frivolous." (*Id.* at 6.) The Court disagrees.

Federal Rule of Civil Procedure Rule 20(a) governs permissive joinder. It identifies two prerequisites for the joinder of defendants when the claims: (1) arise out of the same transaction, occurrence or series of transactions or occurrences; and (2) involve some question of law or fact common to all defendants. Fed. R. Civ. P. 20(a)(2). Joinder is to be construed liberally "in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Reg. Plan Agency*, 558 F.2d 914, 917 (9th Cir. 1977) (citing *Mosley v. General Motors Corp.*, 497 F.2d 1330 (8th Cir. 1974)).

The first prong of the permissive joinder test refers to the "similarity in the factual background" of the claims. *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). There is no bright-line definition of a "transaction" "occurrence" or "series"; courts instead assess the facts of each case to determine whether joinder is appropriate in light of the policies underlying permissive joinder. *See id.* at 1350. Where claims involve enough related operative facts, joinder in a single case may be appropriate. *See Mosley*, 497 F.2d at 1333 ("'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship").

Critically, district courts retain broad discretion in applying Rule 20. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296-97 (9th Cir. 2000) (determining whether severance is appropriate under Rule 20 lies within the sound discretion of the trial court); *Desert Empire Bank v. Insurance Co. of North America*, 623 F.2d 1371, 1375 (9th Cir.

1980) (if Rule 20 requirements are satisfied, courts must examine other relevant factors to determine whether permissive joinder comports with principles of fundamental fairness).

Cases cited by Defendants in support of their position are distinguishable from the instant matter. [9] For example, in *Shehee v. Trumbly*, the court found joinder improper because the two instances of excessive force at issue took place more than two years apart and were allegedly committed by two different defendants. No. 114CV00706AWISABPC, 2015 WL 6706498, at *2 (E.D. Cal. Nov. 3, 2015). Additionally in *Bracken v. Duran*, the court found joinder improper because Plaintiff's three alleged excessive force incidents occurred over the course of five months and each incident had an allegedly distinct reason for the use of excessive force. No. 117CV00306AWIJLTPC, 2017 WL 2654838, at *1 (E.D. Cal. June 20, 2017). The Court was unable to "discern any relation between [the plaintiff's] claims to allow them to proceed in a single action." (*Id.*)

This is not the case here. In his excessive force claim, Plaintiff alleges that during the February 8, 2017 incident, Defendant Gomez "slammed [him] on the ground, dislocating [his] right shoulder." (ECF No. 1 at 3.) Further he claims that the altercation began when Defendant Gomez "ordered me to return to my cell." (*Id.*) In his deliberate indifference claim, plaintiff alleges that he "didn't receive any medical attention from [the February 8, 2017] incident at all". (*Id.* at 4.) When he expressed his pain and requested medical attention from Defendant Florendo, Defendant Florendo stated "you should have went back to your cell." (*Id.*) When he informed Defendant Godinez, he was told "you don't have shit coming to you." Defendants left Plaintiff "in a small caged module" and he "snapped" his "own shoulder back into place". (*Id.*)

---

[9] Defendants cite several cases out of the Eastern District of California in support of their argument that "the simple fact that Plaintiff's deliberate indifference claim against Defendants Florendo and Godinez is based on their alleged lack of treatment for the injuries Plaintiff received as a result of Defendant Gomez's alleged excessive force is not sufficient to relate the two claims." (ECF No. 13-1 at 5 [listing cases].) However, these cases are non-binding authority and provide scant or no analysis of the permissive joinder requirements in light of the prisoner's deliberate indifference and excessive force claims.

17-cv-00901-WQH-BGS

Thus, the two claims together are linked by more than "temporal proximity" as Defendants argue. *See Johnson v. Pamplin*, No. 17-CV-0560-BAS-BLM, 2018 WL 316974, at *3 (S.D. Cal. Jan. 8, 2018) (rejecting report and recommendation's denial of defendants' misjoinder argument because "the Complaint admittedly does not contain factual allegations linking the two different assaults at the hands of different defendants, or which otherwise show that they overlap"). Plaintiff's excessive force and deliberate indifference claims are logically related[10] and provide context for one another: according to the Complaint, Defendant Gomez's use of excessive force caused the shoulder injury for which Plaintiff received no medical treatment, and the reason Defendants Florendo and Godinez denied Plaintiff medical treatment for his shoulder injury was at least partially motivated by the excessive force incident with Defendant Gomez. *See Mosely*, 497 F.2d at 1333 (setting forth the "logical relationship" test). Further, because the Complaint links Defendants Florendo and Godinez's motivation in refusing to provide Plaintiff with medical care to Plaintiff's refusal to return to his cell as directed by Defendant Gomez, the facts underlying the February 8, 2017 incident with Defendant Gomez, including the extent of Plaintiff's injuries, are connected to his deliberate indifferent claim. (*See* ECF No. 1 at 3-4.). Thus, the two claims address common questions of fact. *See Maranon v. Santa Clara Stadium Auth.*, No. 15-CV-04709-BLF, 2017 WL 1436115, at *2 (N.D. Cal. Apr. 24, 2017) (Rule 20 requires "at least one common question of law or fact"). Consequently, liberally construed, Plaintiff's allegations can be said to arise out of the same "transaction, occurrence, or series of transactions or occurrences" and, additionally, present common questions of fact. *See* Fed. R. Civ. P. 20.

---

[10] The Ninth Circuit has not explicitly adopted the "logical relationship test" set forth in *Mosely*, but a number of district courts in the circuit have cited or applied this test. *See Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 757 (C.D. Cal. 2016) (listing cases). Further, the Ninth Circuit has cited to *Mosely* in its discussion of the underlying purpose of Rule 20. *See League to Save Lake Tahoe*, 558 F.2d at 917. Finally, the Ninth Circuit has recognized a similarly expansive definition of transaction, even if not specifically in the Rule 20 context. *See, e.g.*, *Union Paving Co. v. Downer Corp.*, 276 F.2d 468, 470 (9th Cir. 1960) (claims that have definite "logical relationship" arise out of same transaction or occurrence).

Finally, it would be a waste of judicial time and resources to litigate these two claims separately. Any minimal potential inconvenience or prejudice that could result from joinder is outweighed by the needless cost and effort to both the Court and Plaintiff that separate trials would entail. *See Desert Empire Bank*, 623 F.2d at 1375 (courts must examine other relevant factors to determine whether permissive joinder comports with principles of fundamental fairness); *SEC v. Leslie*, No. C 07–3444, 2010 WL 2991038, at *4 (N.D. Cal. July 29, 2010) (these factors may include judicial economy, prejudice, and whether separate claims require different witnesses and documentary proof).

For the reasons discussed above, the Court **RECOMMENDS** that the District Court reject Defendants' argument that Plaintiff's deliberate indifference claim against Defendants Florendo and Godinez and his excessive force claim against Defendant Gomez are improperly joined. Accordingly, Defendants' Motion to Dismiss on this ground should be **DENIED**.

### B. Plaintiff Failed To Plead A Cognizable Procedural Due Process Claim

The second ground upon which Defendants move to dismiss a portion of Plaintiff's Complaint is that Plaintiff's claims based on falsified reports or accusations fail as a matter of law. (ECF No. 13-1 at 7.) In a single paragraph. they argue that claims based on false accusations or reports that lead to discipline are not cognizable as a prisoner has "no constitutionally guaranteed right to avoid being falsely or wrongly accused of conduct that may result in the deprivation of a protected liberty interest." (ECF No. 13-1 at 6 [citing *Dawson v. Beard*, No. 1:15-CV-01867 BLB, 2016 WL 1137029, at *5 (E.D. Cal. Mar. 23, 21) ("issuance of a false RVR does not, in and of itself, support a claim under section 1983")].) Defendants characterize the legal basis of Plaintiff's claim as the Fourteenth Amendment's due process clause. (ECF No. 13-1 at 6 n.1.) They cite non-binding district court authority in support of their position.

Defendants are correct in that there is no constitutional protection for prisoners solely based on the fact that false disciplinary charges are filed and prosecuted. *Buckley v. Gomez*, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997), *aff'd*, 168 F.3d 498 (9th Cir. 1999);

*Garrott v. Glebe*, 600 Fed. App'x 540, 545 (9th Cir. April 22, 2015) (no clearly established federal law that "a prisoner has a right to be free from false accusations"); *see Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (claims based on the falsity of charges standing alone do not state a constitutional claim); *Freeman v. Rideout*, 808 F.2d 949, 95-52 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."). To the extent that Plaintiff challenges the issuance of the RVR on the grounds that it contained false information, his claim cannot stand.

Here, however, Plaintiff's claims are linked to a due process claim. Defendants ignore these other allegations contained in Plaintiff's third cause of action. Specifically, Plaintiff alleges he "pled innocent" to Defendant Gomez's RVR for "Battery on a Peace Officer" (ECF No. 1 at 5.) and was found guilty based on a "'preponderance of the evidence'". (*Id.* [quotations in original].) He alleges during the hearing, he "pleaded his innocence and exposed contradicting narratives of the alleged victim [Defendant Gomez] and the only witness of the incident exposing the obvious false[ ] report[.]" (*Id.*) He also alleged that as a result of his conviction for "Battery on a Peace Officer" he received "an additional 150 days added to [his] term." (*Id.*) Defendants have construed this as a loss of 150 good-time credits. (*See* ECF No. 13-1 at 7.)

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriving any person of life, liberty, or property, without the due process of law." U.S. Const. Amend. XIV. The procedural guarantees of due process apply when a constitutionally-protected liberty or property interest is at stake. *See Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974). To invoke the protection of the Due Process Clause, Plaintiff must establish the existence of a liberty interest. *Sandin v. Conner*, 515 U.S. 472 (1995).

In *Sandin*, the Supreme Court "refocused the test for determining the existence of a liberty interest away from the wording of prison regulations and toward an examination of the hardship caused by the prison's challenged action relative to the 'basic conditions' of life as a prisoner." *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir.1996) (citing *Sandin*, 515

U.S. at 484); *McQuillion v. Duncan*, 306 F.3d 895, 902-03 (9th Cir. 2002) (*Sandin* abandons the mandatory/permissive language analysis courts traditionally looked to when determining whether a state prison regulation created a liberty interest which required due process protection). Due process protections are implicated if Plaintiff alleges facts to show that Defendants: (1) restrained his freedom in a manner not expected from his sentence, and (2) "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Loss of time credits may constitute a protectable liberty interest under the Fourteenth Amendment. *Wolff*, 418 U.S. at 557; *see also Gotcher v. Wood*, 66 F.3d 1097, 1100 (9th Cir. 1995), *vacated by Wood v. Gotcher*, 520 U.S. 1238 (1997). Due process requires procedural protections before a prison inmate can be deprived of a protected liberty interest such as good-time credits. *Wolff*, 418 U.S. at 556-57. The Fourteenth Amendment requires prison officials to provide the prisoner with: (1) written notice of the charges at least 24-hours before the hearing; (2) the opportunity to appear in person at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement by the finders of fact of the evidence relied on for their decision and the reasons for their actions. *Wolff*, 418 U.S. at 564-66. Additionally, the finding of guilt at a disciplinary hearing resulting in the revocation of good-time credits must be based upon "some evidence." *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 454-55 (1985); *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994) (noting the "some evidence" standard is "minimally stringent").

In their Motion, Defendants do not address the standards for a procedural due process claim and instead cite non-binding district court cases for the proposition that the falsification of a RVR is insufficient to state a claim. (ECF No. 13-1 at 6-7.) However, procedural due process claims are often alleged when the filing of a false RVR results in the loss of a protected liberty interest. *Johnson v. Pamplin*, No. 17CV560-BAS (BLM), 2017 WL 5623578, at *8 n.3 (S.D. Cal. Nov. 21, 2017) ("Filing a false report can state a claim upon which relief can be granted if the false report was prepared in retaliation for the exercise of a constitutional right or a prisoner is not given procedural due process in the

17-cv-00901-WQH-BGS

hearing on the disciplinary charge resulting from the false report"), *report and recommendation adopted in part*, No. 17-CV-0560-BAS-BLM, 2018 WL 316974 (S.D. Cal. Jan. 8, 2018); *see, e.g.*, *Freeman*, 808 F.2d at 951 (even though a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," he has "a constitutionally protected right not to be placed in punitive segregation without" procedural due process); *Deadmon v. Grannis*, No. 06CV1382-LAB (WMC), 2008 WL 595883, at *10 (S.D. Cal. Feb. 29, 2008) ("an inmate can state a cognizable claim for violation of his federal constitutional rights associated with an allegedly false disciplinary report" through two means: by either alleging the false report was retaliatory or by alleging he was "not afforded procedural due process in connection with the issuance and  hearing of the disciplinary report"); *Murillo v. McBride*, No. 11CV1560 CAB BGS, 2012 WL 1328206, at *3-4 (S.D. Cal. Apr. 16, 2012).

Liberally construing Plaintiff's allegations referenced above, the Court finds that Plaintiff is attempting to plead a procedural due process claim in relation to the disciplinary hearing regarding Defendant Gomez's allegedly false RVR.  However, without more, Plaintiff's claim is insufficient to support a claim of denial of procedural due process with regards to his disciplinary hearing.  He has failed to sufficiently establish his protected liberty interest and identify which of the due process requirements pertaining to his disciplinary hearing were violated.  *See Wolff*, 418 U.S. at 564-66; *Hill*, 472 U.S. at 454. However, it is not clear that Plaintiff would be unable to plead a cognizable procedural due process claim in the future.  *See Silva v. Worth*, No. 116CV01131AWISKOPC, 2017 WL 4699975, at *5 (E.D. Cal. Oct. 19, 2017) (holding prisoner's allegations related to the filing of a false RVR were insufficient to state a procedural due process violation, but granting leave to amend); *see also Cato*, 70 F.3d at 1106 ("[a] pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment").

Accordingly, and for the reasons discussed above, the Court **RECOMMENDS** that Plaintiff's third claim entitled "false accusations and false imprisonment" be **DISMISSED with leave to amend** to afford him the opportunity to plead a cognizable procedural due process claim.

### C. The Court Lacks Sufficient Information to Grant Defendants' Motion On The Basis That *Heck v. Humphrey* Bars Plaintiff's False Accusation And Imprisonment Claims

The third ground upon which Defendants move to dismiss a portion of Plaintiff's Complaint is that Plaintiff's claim of false accusations and false imprisonment against Defendant Gomez based on his disciplinary hearing are barred by the "favorable termination doctrine" per *Heck v. Humphrey*, 512 U.S. 477 (1994). (ECF No. 13-1 at 7.) However, *Heck* and its progeny are much more nuanced than Defendants acknowledge, and the Court lacks sufficient information at this stage to grant Defendants' Motion to Dismiss on this basis. As such, this argument should be rejected.

Habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release. *Heck*, 512 U.S. at 481; *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see also Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (A "prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement.'" (citation omitted)). In *Heck*, the Supreme Court considered whether a state prisoner can bring a suit for damages under § 1983 based on the constitutional invalidity of a conviction or sentence and held that such claims are not cognizable stating:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . . [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it

would, the complaint would be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 488-87; *see also Wilkinson*, 544 U.S. at 81 ("*Heck* specifies that [one] cannot use § 1983 to obtain damages where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence."); *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (per curiam) ("[W]here success in a prisoner's § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence."). This concept is often referred to as *Heck*'s "favorable termination" requirement. *See, e.g.*, *Muhammad*, 540 U.S. at 754-55.

In *Edwards v. Balisok*, 520 U.S. 641, 643-47 (1997), the Supreme Court extended *Heck*'s favorable termination requirement to prison disciplinary actions resulting in the loss of a prisoner's good time credits. Thus, *Heck* applies in the prison disciplinary context if the "defect complained of by [Plaintiff] would, if established necessarily imply the invalidity of the deprivation of his good-time credits", *Edwards*, 520 U.S. at 646, and if the restoration of those credits "necessarily" would "affect the duration of time to be served[.]" *Muhammad*, 540 U.S. at 754; *see also Nettles v. Grounds*, 830 F.3d 922, 929 n.4 (9th Cir. 2016) (en banc), *cert. denied*, 137 S. Ct. 645 (2017). Defendants have the burden of demonstrating that *Heck* bars Plaintiff's § 1983 claims. *See Sanford v. Motts*, 258 F.3d 1117, 1119 (9th Cir. 2001) (burden on defendants to establish *Heck* applies).

The Ninth Circuit recently underscored in *Nettles v. Grounds*, that the *Heck* bar as explained in *Edwards* "applies only to administrative determinations that 'necessarily' have an effect 'on the duration of time to be served." 830 F.3d at 929 n.4 (discussing *Muhammad*, 540 U.S. 749 (2004) (per curiam)); *see Rios v. Paramo*, No. 14CV01073WQHDHB, 2016 WL 8731085, at *32 (S.D. Cal. July 15, 2016) (holding that because, if successful, Plaintiff will not necessarily shorten the length of his confinement, his retaliation, conspiracy, and due process claims arising from the issuance of the RVR

and the associated disciplinary proceeding are not barred by *Heck*), *report and recommendation adopted*, No. 14CV1073 WQH (DHB), 2016 WL 4709063 (S.D. Cal. Sept. 9, 2016). *Ramirez v. Galaza*, 334 F.3d 850 (9th Cir. 2003) explained this requirement in the context of disciplinary hearings as follows:

> [T]he favorable termination rule does not apply to § 1983 suits challenging a disciplinary hearing or administrative sanction *that does not affect the overall length of the prisoner's confinement*. Where the prison's alleged constitutional error does not increase the prisoner's total period of confinement, a successful § 1983 action would not necessarily result in an earlier release from incarceration, and hence, does not intrude upon the "heart" of habeas jurisdiction. In such cases, the favorable termination rule of *Heck* and *Edwards* does not apply.

*Id.* at 858 (emphasis added); *see also Wilkerson v. Wheeler*, 772 F.3d 834, 840 (9th Cir. 2014) (quoting *Muhammad*, 540 U.S. at 751) ("the Supreme Court has clarified that *Heck* does not bar a § 1983 claim that 'threatens no consequence for [an inmate's] conviction or the duration of [his or her sentence.]'"). Applying these principles, in *Wilkerson v. Wheeler* the Ninth Circuit held *Heck* inapplicable because the inmate plaintiff was serving an indefinite life sentence and any "loss of good time credits could not extend his potential term, which [was] life in prison." 722 F.3d at 840 (9th Cir. 2014).

Here, it is not clear that Plaintiff's conviction for "Battery on a Peace Officer" via prison disciplinary proceedings and his resultant loss of 150 days good-time credits would *necessarily* affect the length of time he must serve in custody. *See Nettles*, 830 F.3d at 929 n.4. Defendants argue that Plaintiff's "finding of guilt resulted in Plaintiff forfeiting 150 days of credits, and therefore altered the length of his prison term." (ECF No. 13-1 at 7.) However, the Court does not have any information before it regarding the nature of plaintiff's sentence, *e.g.*, whether he is serving a determinate or indeterminate sentence or whether his initial eligibility for parole has already passed. For example, if the RVR were to be used in a parole determination, the violation would only be one factor of many in a Board of Parole Hearings determination. *See Nettles*, 830 F.3d at 934-35 ("the presence of a disciplinary infraction does not compel the denial of parole, nor does an absence of an

infraction compel the grant of parole"); *see also Delgado v. Gonzalez*, 686 F. App'x 434, 434-35 (9th Cir. 2017) (vacating district court's dismissal of inmate's § 1983 complaint alleging a retaliation claim in connection with an allegedly false RVR). Further, if the date for which Plaintiff was initially eligible for parole has already passed, the loss of good-time credits may not affect the length of his sentence. *See Wilkerson*, 772 F.3d at 840.

Thus, Defendants have failed to demonstrate how Plaintiff's loss of credits resulting from the disciplinary conviction will have any impact on the length of Plaintiff's confinement. Because the Court lacks sufficient information about Plaintiff's sentence, it cannot determine whether a *Heck* bar applies to Plaintiff's false accusation and imprisonment claims. *See, e.g.*, *Faulker v. Phillips*, No. 16-CV-63-DMS(WVG), 2016 WL 7717820, at *8 (S.D. Cal. Dec. 2, 2016), *report and recommendation adopted sub nom. Faulkner v. Phillips*, No. 16-CV-0063 DMS (WVG), 2017 WL 107145 (S.D. Cal. Jan. 11, 2017). Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss on this ground be **DENIED**.

### D. Eleventh Amendment Bars Suit Against Defendants In Their Official Capacities

Finally, Defendants argue Plaintiff's claims against them in their official capacities must be dismissed, as Defendants are entitled to Eleventh Amendment immunity for claims for damages and Plaintiff's requested injunctive relief is moot as he is no longer housed at RJD. (ECF No. 13-1 at 8.)

The Eleventh Amendment generally bars claims for damages against state officials acting in their official capacities. *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016); *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010); *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992), *as amended* (Oct. 9, 1992) (per curiam) ("It is thus clear that the eleventh amendment will bar [prisoner] from bringing his claims in federal court against the state officials in their *official* capacities. It will not, however, bar claims against the state officials in their *personal* capacities."). "An official sued in his official capacity has the same immunity as the state,

and is entitled to [E]leventh [A]mendment immunity." *Pena*, 976 F.2d at 473; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity . . . should be treated as suits against the State."). Moreover, "[t]he State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court . . . ." *Dittman v. California*, 191 F.3d 1020, 1025-26 (9th Cir. 1999); *see also Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009) (citing *Dittman v. California*).

However, there is a narrow exception to this rule when state officers are sued in their official capacities and a plaintiff seeks only a declaratory judgment or injunctive relief. *Brown v. Or. Dep''t of Corr.*, 751 F.3d 983, 989 (9th Cir. 2014) (citing *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982)). If a prisoner challenges conditions of confinement and seeks injunctive relief, his transfer to another prison renders the request for injunctive relief moot absent evidence of an expectation of being transferred back. *See Preiser v. Newkirk*, 422 U.S. 395, 402-03 (1975); *Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir. 2001); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam); *see also Andrews v. Cervantes*, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007).

Here, Plaintiff sues Defendants in both their official and individual capacities. (ECF No. 1 at 2.) To the extent he seeks damages against Defendants in their official capacities, his claims are barred by the Eleventh Amendment. *See Mitchell*, 818 F.3d at 442; *Pena*, 976 F.2d at 472; *Dittman*, 191 F.3d at 1025-26.

Additionally, Plaintiff seeks an injunction against Defendants to (1) not assault or batter mental health patients; (2) provide injured inmates with medical care; and (3) not to fabricate false allegations. (ECF No. 1 at 7.) However, since filing the Complaint, Plaintiff has been transferred to two different prisons and is no longer housed at RJD. (ECF Nos. 4, 9 [notices of change of address].) The Court's docket reflects that Plaintiff is currently incarcerated at Kern Valley State Prison, and he has not alleged or filed anything indicating that any of Defendants are currently working there. Accordingly, Defendants no longer have oversight or control over Plaintiff and an injunction would carry no weight. As a

result, to the extent Plaintiff seeks injunctive relief, such claim is moot. Because Plaintiff's claim for injunctive relief is moot, he cannot bring suit against Defendants in their official capacities under the exception discussed above. *See Brown*, 751 F.3d at 989.

Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss on this ground be **GRANTED**.

## CONCLUSION

For the reasons outlined above, **IT IS RECOMMENDED** that the District Court issue an Order: (1) Approving and Adopting this Report and Recommendation; (2) **GRANTING** Defendants' Motion for Summary Judgment (ECF No. 14); and (3) **GRANTING** Defendants' Motion to Dismiss (ECF No. 13) pursuant to Civil Local Rule 7.1.f.3.c. If the District Court declines to grant Defendants' Motion to pursuant to Civil Local Rule 7.1.f.3.c, **IT IS RECOMMENDED** in the alternative that the Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART** as follows**:**

    (1) **DENIED IN PART**, insofar as Defendants argue Plaintiff's claims are improperly joined in this action;

    (2) **GRANTED IN PART**, insofar as Plaintiff failed to plead a cognizable procedural due process claim;

    (3) **DENIED IN PART**, insofar as Defendants argue Plaintiff's false accusation and imprisonment claims are barred by *Heck v. Humphrey*; and

    (4) **GRANTED IN PART**, in that Plaintiff's claims against all Defendants in their official capacities be **DISMISSED WITH PREJUCIDE**.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties no later than **August 20, 2018**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objection shall be filed with the Court and served on all parties no later than **August 27, 2018**. The parties are advised that the failure to file objections within the specified time may waive the right to raise those

objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED**.

Dated: July 30, 2018

Hon. Bernard G. Skomal
United States Magistrate Judge